STATE OF NORTH CAROLINA v. MELVIN LEON LOFTIN

No. 495A87

(Filed 2 June 1988)

1. Homicide § 28; Criminal Law § 168.2— instruction on self-defense—no plain error

If the trial court in a first degree murder case erred in instructing on self-defense, such error was favorable to defendant, and there was no merit to his contention that the instruction amounted to plain error.

2. Homicide § 28.8; Criminal Law § 168— failure to instruct on defense of accident—no plain error

Though the trial court in a first degree murder case erred in failing to instruct the jury on the defense of accident, such error was not plain error because the instruction would not have affected the outcome where defendant's evidence consisted principally of his own uncorroborated testimony as to what occurred on the afternoon in question; his testimony was not only contradicted by the State's witnesses, but defendant himself was impeached by both his past record of criminal activity and by his prior inconsistent statements; the testimony and the physical evidence did not lend credibility to defendant's description of the shooting as the result of a struggle over the victim's gun; only the State presented testimony of persons other than defendant who had witnessed the events surrounding the shooting; and one of the eyewitnesses testified in complete contradiction to defendant's story.

3. Criminal Law §§ 117.1, 168— instruction on impeachment by prior inconsistent statements—no plain error

Even if the trial court erred in instructing the jury prior to its deliberation on impeachment by prior inconsistent statements, such error was not plain error where the statements in question were made to a police officer concerning defendant's address and the date of his purchase of a handgun, and the jury probably would not have reached a different verdict had the allegedly erroneous instruction not been given.

APPEAL as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Smith, J.,* at the 8 June 1987 Criminal Session of Superior Court, CRAVEN County, upon defendant's conviction by a jury of murder in the first degree. Heard in the Supreme Court on 12 April 1988.

*Lacy H. Thornburg, Attorney General, by Doris J. Holton, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

Defendant Melvin Leon Loftin was convicted of one count of first-degree murder arising out of the January 1987 shooting death of Curtis Bryant. The State having stipulated before trial to the absence of any statutory aggravating factors under N.C.G.S. § 15A-2000, the case was tried as a noncapital case, and defendant was sentenced accordingly to the mandatory term of life imprisonment.

In his appeal to this Court, defendant brings forward for our consideration two assignments of error relative to the guilt-innocence phase of his trial. We have carefully reviewed the entire record on appeal and both of defendant's assignments of error in turn, and we find no reversible error in defendant's trial. Accordingly, we leave undisturbed defendant's conviction and the accompanying life sentence.

The crime in question occurred in a garage at the home of one Frank Roberts[1] in the Dover Community of Craven County, North Carolina. This garage was apparently a familiar gathering place for certain members of the Dover Community who would meet there to, among other things, talk, consume alcoholic beverages, play cards, and watch television. The shooting incident occurred on the afternoon of Saturday, 24 January 1987. At trial, the State and defendant presented vastly different versions of what in fact transpired on that occasion.

Evidence presented by the State at trial tended to show the following relevant facts and circumstances. Defendant came to the garage meeting place between 3:45 p.m. and 4:30 p.m. on the day in question. Upon arrival, defendant spoke to several of the persons at the garage, including Wesley Roberts, the son of the proprietor, and Ray Hart, a longtime Dover resident. Defendant, who did not appear intoxicated, inquired of Ray Hart as to whether he had seen Curtis Bryant. He explained to Ray Hart that he needed to talk with Bryant about something.

Curtis Bryant arrived at the garage meeting place some thirty minutes later. Defendant apparently observed the victim as he

---

1. The record reveals that Frank Roberts was but one of the several names by which the proprietor was known. He was also known by some members of the community as Frank Rouse and Frank Robinson.

got out of a car in the parking lot. As Curtis Bryant came through the door of the garage, and as he was removing one of his gloves, defendant met him. Without any conversation, defendant pulled a handgun from his back pocket, shot the victim once in the face, and returned the gun to his back pocket. Wesley Roberts then took the handgun from defendant's back pocket and, covering it with a napkin or paper towel, placed it on a table or bench inside the garage.

Some two hours later, at approximately 6:50 p.m., Deputy Sheriff Terry Register, a crime lab evidence technician with the Craven County Sheriff's Department, arrived at the scene. Deputy Sheriff Register found the victim immediately behind the door to the garage, lying in a pool of blood. She observed, among other things, that a bullet appeared to have entered the victim's right eyelid and exited at the back of his head. She noted also that in the victim's left hand was clutched a glove. Deputy Sheriff Register located a .32-calibre automatic handgun covered by a paper towel, but she did not find any other weapon either inside or outside the area of the garage.

An autopsy revealed that a .32-calibre bullet had indeed entered the victim's right upper eyelid and had exited the back of his head on the right side, doing massive damage to the brain. The path of the bullet was straight, with a slightly upward trajectory. Massive hemorrhaging and obliteration of the brain mass directly resulted in the victim's immediate death. The autopsy failed to reveal any alcohol content in the victim's blood at the time of his death.

John Woolard, an investigative officer with the Craven County Sheriff's Department, talked with defendant on the evening of the shooting. Defendant told Officer Woolard on that occasion where he lived and worked. Subsequently, however, Officer Woolard determined that the address that defendant had given as his residence did not in fact exist. On Monday, 26 January, defendant admitted that he had lied about his address and that he had also lied about his place of employment. Defendant also told Officer Woolard that he did in fact own a weapon—specifically, a handgun which he had purchased from "some dudes in Greenville" several months prior to the victim's death.

Further evidence for the State tended to show that the victim was not a person prone to violence. Wesley Roberts testified that Curtis Bryant, who had dated his sister for the four or five years just prior to the time when defendant started dating her, had never to his knowledge possessed a knife or a gun. In addition, Marlena Bryant, the victim's sister, and Ray Hart, the longtime Dover resident who had witnessed the shooting, also indicated that the victim, in their experience, had never possessed a gun or a knife.

Defendant's evidence, primarily in the form of his own testimony, portrayed an entirely different event at the garage meeting place on the afternoon in question. According to defendant, he had been dating Cathy Roberts, the daughter of the owner of the garage and the former girlfriend of the victim, for some eight months. Defendant testified that he was preparing to leave the establishment at the time that Curtis Bryant arrived there on the afternoon of 24 January. The victim came through the door of the garage on that occasion and told defendant that he was tired of defendant's messing with the victim's girlfriend.

Defendant testified further that the victim then stepped back and pulled a gun from his pocket. Defendant then attempted to get the gun away from the victim, and a struggle ensued which lasted for several minutes. During that struggle, maintains defendant, he grabbed the gun and it discharged, striking Curtis Bryant in the face and killing him. Defendant, in an attempt to support this struggle theory of the case, also presented evidence that the victim had once pointed a shotgun at him on the occasion of one of defendant's visits to see Cathy Roberts.

Following the presentation of all of the evidence, the trial judge instructed the jury on first-degree murder, second-degree murder, and self-defense. He did not charge the jury on death by accident. Following the instructions to the jury, neither counsel indicated any complaint concerning the instructions, and neither suggested corrections, additions, or substitutions. The case then went to the jury.

Having been instructed as stated above, and on the basis of the above-mentioned and other evidence, the jury found defendant guilty of the first-degree murder of Curtis Bryant. Pursuant to the jury's verdict, the trial judge sentenced defendant to a

mandatory life term. In his appeal to this Court, defendant brings forward for our review two specific assignments of error: first, that the trial judge committed reversible error in instructing on self-defense and in failing to instruct on accident; and second, that the trial judge committed reversible error in instructing on impeachment by prior inconsistent statements. We deal with both of these assignments in turn, and we find merit in neither.

## I.

In his first assignment of error, defendant asserts that the trial judge committed reversible error, first, in instructing the jury on self-defense and, second, in failing to instruct the jury concerning death by accident. Defendant concedes here that his attorney did not object to the trial judge's instruction at trial as required by Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure. Notwithstanding this admitted failure to properly preserve the issue for appellate review, defendant argues that the trial judge's error was such as to constitute plain error entitling defendant to a new trial per this Court's decision in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983). We do not agree with defendant as to either of the instructions in question, and we therefore overrule this first of his assignments of error.

At the close of the presentation of all of the evidence at trial, Judge Smith instructed the jury on first-degree murder, second-degree murder, and in addition, on self-defense. He did not, however, instruct the jury on death by accident. After the jurors had retired to deliberate, Judge Smith solicited the lawyers' comments on the instructions he had just delivered. The following exchange occurred:

> MR. HEATH: We don't have any complaints with the charge as delivered.

> THE COURT: Any corrections, additions, substitutions or anything?

> MR. MCFADYEN: No, sir.

> THE COURT: Go ahead. Let the record so indicate. Give them the sheet.

Consistent with this excerpt from the trial transcript, defendant concedes on appeal that he failed to enter a timely objection to the jury instructions of which he now complains.

Defendant is quite correct to concede that, having thus failed to enter a timely objection to the instructions in question, he has failed to properly preserve the question of the instructions' propriety for our review. In pertinent part, Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure provides that "[n]o party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict." As defendant also correctly points out, however, this Court, in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983), mitigated the harshness of Rule 10(b)(2) via the adoption of the plain error rule. This rule had been used and is used today in the federal courts pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure. That rule provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed. R. Crim. P. 52(b).

Since this Court's adoption of the plain error rule in *Odom*, we have had several opportunities to interpret the rule for the purposes of North Carolina courts. It is clear that the burden upon defendant to demonstrate plain error in cases such as that before us today is severe. In *State v. Walker*, 316 N.C. 33, 340 S.E. 2d 80 (1986), for example, we stated as follows:

> The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. Therefore, the test for "plain error" places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection. This is so in part at least because the defendant could have prevented any error by making a timely objection.

*Id.* at 39, 340 S.E. 2d at 83-84 (citations omitted). With this as background, we turn now to a review of the instructions before us for plain error. We find none.

[1] First, assuming, without deciding, that defendant is correct in his assertion that Judge Smith committed error in instructing

the jury on self-defense, such error could not be said to rise to the level of plain error. Even if, as defendant apparently argues, a self-defense instruction was not supported by the evidence presented at trial, this alleged error was favorable to defendant. *State v. Bush*, 307 N.C. 152, 297 S.E. 2d 563 (1982). As a result of the trial judge's jury instruction concerning self-defense, the jury was given a vehicle by which to acquit defendant that it would not otherwise have had. *Id. See also State v. Boone*, 299 N.C. 681, 263 S.E. 2d 758 (1980). It is therefore without merit to suggest that Judge Smith's action in this regard, if indeed it was error at all, rises to the level of plain error. Accordingly, we reject defendant's argument relative to the self-defense instruction.

[2]   Second, with regard to the instruction on accident, we note as an initial matter that Judge Smith's failure to give the instruction constitutes *error*. This Court has held on numerous occasions that it is the duty of the trial court to instruct the jury on all of the substantive features of a case. *State v. Brock*, 305 N.C. 532, 290 S.E. 2d 566 (1982); *State v. Ferrell*, 300 N.C. 157, 265 S.E. 2d 210 (1980). This is a duty which arises notwithstanding the absence of a request by one of the parties for a particular instruction. *State v. Dooley*, 285 N.C. 158, 203 S.E. 2d 815 (1974); *State v. Todd*, 264 N.C. 524, 142 S.E. 2d 154 (1965). All defenses arising from the evidence presented during the trial constitute substantive features of a case and therefore warrant the trial court's instruction thereon. *State v. Brock*, 305 N.C. 532, 290 S.E. 2d 566 (1982); *State v. Jones*, 300 N.C. 363, 266 S.E. 2d 586 (1980).

We agree with defendant's contention that accident was a substantive feature of the case before us. Defendant's evidence, primarily in the form of his own testimony, revealed that defendant and the victim struggled over the victim's handgun for some three to four minutes. It was during this struggle, says defendant, that the gun discharged, striking the victim in the face and killing him. Defendant's "struggle" theory of the case was such as to clearly make the defense of accident a substantive feature arising upon the evidence presented below. Accordingly, even in the absence of a specific request therefor, the trial judge was duty bound under our case law to instruct the jury on accident. His failure to so instruct was therefore error.

Having held that the trial judge erred in his failure to instruct in this regard, we hasten to add that we do not find the

trial judge's omission to constitute *plain error.* As we noted above, the burden carried by defendant in a case such as this one is heavy indeed, and we do not find that he has successfully borne it. As in our decision in *State v. Odom,* 307 N.C. 655, 300 S.E. 2d 375, the evidence of defendant's guilt of the crime of which he stands convicted is such that the trial judge's mistake could hardly be considered plain error.

As we stated above, in order for this Court to hold that plain error occurred at trial, we must be convinced that, but for the error, the jury probably would have reached a different verdict. *State v. Walker,* 316 N.C. 33, 340 S.E. 2d 80. In other words, we must determine that Judge Smith's omission of the instruction on accident "tilted the scales" and caused the jury to convict this defendant of first-degree murder. *Id.* at 39, 340 S.E. 2d at 83-84. We are convinced to a certainty that, even had Judge Smith given the admittedly called-for instruction, it would not have affected the outcome.

The parallels between the evidence in the case before us and that in *Odom,* wherein we adopted the plain error rule but found no plain error on the facts, are significant. Here, only the State presented the testimony of persons other than defendant who had witnessed the events in the garage on the day in question. One of these persons, Ray Hart, witnessed the shooting, and he testified, in complete contradiction to defendant's story, that defendant, who had been asking about the victim's whereabouts, shot the victim in the face as the latter entered the garage.

Defendant's evidence, on the other hand, consisted principally of his own uncorroborated testimony as to what occurred on the afternoon in question. His testimony was not only contradicted by the State's witnesses, defendant himself was impeached by both his past record of criminal activity[2] and by his prior inconsistent statements. Moreover, the record of the case as a whole, including all of the testimony and the physical evidence, does not lend credibility to defendant's description of the shooting as the result of a struggle over the victim's gun. That defendant's story com-

2. The prosecutor's cross-examination of defendant revealed that defendant had previously been convicted on one occasion of grand larceny, on one occasion of possession of marijuana, and on three occasions of driving while impaired.

pletely lacked the ring of truth obviously did not escape the jury, which convicted defendant of premeditated and deliberate murder following a mere twenty-seven minutes of deliberation.

We find no plain error in the trial judge's instructions to the jury in the case at bar. Accordingly, this assignment of error is hereby overruled.

## II.

[3]  In his second and final assignment of error on appeal, defendant asserts that the trial judge committed reversible error in instructing the jury prior to its deliberation on impeachment by prior inconsistent statements. Once again, defendant concedes that his attorney failed to enter a timely objection under Rule 10(b)(2) of our Rules of Appellate Procedure. Again, however, defendant argues that the trial judge's error was sufficiently serious as to constitute plain error entitling him to a new trial consistent with our decision in *Odom*. Assuming, without deciding, that Judge Smith erred in instructing the jury on impeachment by prior inconsistent statements, we do not agree that such an error would constitute plain error on the facts of this case.

Defendant, as the basis for his assignment of error concerning the instruction on prior inconsistent statements, alleges that at least two instances of improper impeachment occurred at trial. Defendant concedes that he did not enter an objection on either occasion. First, defendant contends that error occurred when Officer Woolard, a rebuttal witness for the State, testified that defendant had given him false information regarding his home address and place of employment during the investigation of the case. This impeachment was improper, according to defendant, because defendant, during the course of cross-examination, had already admitted lying to Officer Woolard. This rebuttal evidence, maintains defendant, rebutted nothing and was not inconsistent with defendant's actual trial testimony.

Second, defendant contends that error occurred when the prosecutor was permitted, during Officer Woolard's rebuttal testimony, to question him about defendant's out-of-court statements concerning the purchase of a .32-calibre handgun. Transcript excerpts perhaps best reveal the nature of this argu-

ment. To wit, during the prosecutor's cross-examination of defendant, the following exchange occurred:

Q. Now, then, he asked you about a gun, didn't he?

A. Yes, he did.

Q. And you told him, "I owned a gun. I purchased it from some dudes from Greenville at a service station leaving work one night several months ago," didn't you?

A. I didn't tell him what gun.

THE COURT: You didn't tell him what?

A. Ask the question again.

Q. [Mr. McFadyen] You told this man that you bought the gun, the .32 pistol, from some dudes at a service station leaving work at Greenville several nights ago, didn't you?

A. No.

Q. You said, "I bought a watch and a gold chain, all for $125, and the gun," didn't you?

A. No.

Q. What did you tell him?

A. I told him I owned a gun. I said I bought it from some dudes in '76. He asked me what kind it was. I told him I had a .32.

Subsequently, as indicated above, the State presented Officer Woolard as a rebuttal witness. Upon direct examination by the prosecutor, the following exchange occurred:

Q. Now, did there come a time later that day after you had been to the residence of Bernice Meyers on Shine Street, did you ask him about the gun?

A. Yes, sir. . . .

. . . He said, quote, I owned a gun. I purchased it from some dudes in Greenville, North Carolina, at a service station, leaving work one night several months ago. I bought a gold watch and chain all for a hundred and twenty-five dollars.

Defendant contends that this impeachment was improper because Officer Woolard's statements tended to impeach defendant on merely collateral matters. The date of purchase of the handgun and the fact that the gun was purchased as a part of a larger transaction, claims defendant, were of no consequence.

Nonetheless, as a part of his instructions to the jury at the close of all of the evidence, Judge Smith did in fact charge the jury on impeachment by prior inconsistent statements. Specifically, he stated as follows:

> Now, as I remember, there was also some evidence offered that tended to show at some earlier time the defendant in this case made certain statements which you might find are inconsistent with some of the testimony he gave here in the courtroom. But, ladies and gentlemen, you must not consider any earlier statement as evidence of what happened on the date and time in question, because it wasn't made under oath and it wasn't made here in the courtroom.

> But if you should find that the defendant made an earlier statement and if you should further find that it is inconsistent with the testimony he gave here in the courtroom, you may consider that fact, together with all other facts and circumstances which you determine might bear upon his truthfulness in deciding whether or not to believe the testimony that he gave here in this courtroom under oath.

Assuming, without deciding, that defendant is correct in his assertion here that the trial judge erred in his instruction to the jury concerning impeachment, we are satisfied that such an error could not fairly be considered plain error. As we stated in Part I above, the burden borne by a defendant in a plain error case such as that before us today is severe. Before deciding that the supposed error in Judge Smith's instructions to the jury constitutes plain error, we must be convinced that but for the error, the trial jury probably would have reached a different verdict. *State v. Walker*, 316 N.C. 33, 340 S.E. 2d 80 (1986). The plain error rule, we have held, applies in only the truly exceptional case. *State v. Joplin*, 318 N.C. 126, 347 S.E. 2d 421 (1986). We are convinced, in great part by the similarities between *Odom* and the case at bar discussed in Part I above, that this is simply not such a case. Accordingly, this second assignment of error is hereby overruled.

In conclusion, having carefully reviewed the record and each of defendant's assignments of error, we find that defendant received a fair trial, free of reversible error. Accordingly, we leave undisturbed defendant's conviction of first-degree murder and the accompanying sentence of life imprisonment.

No error.