STATE OF NORTH CAROLINA
v.
ERIC DANIEL EARLY
No. COA09-389.
Court of Appeals of North Carolina.
Filed: February 2, 2010.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Richard A. Graham, for the State.
Winifred H. Dillon for Defendant-Appellant.
McGEE, Judge.
Eric Daniel Early (Defendant) was convicted of first-degree arson, possession of drug paraphernalia, and resisting a public officer on 2 October 2008. Defendant was sentenced to an active term of 65 to 87 months. Defendant appeals.
The evidence at trial tended to show that on 1 November 2007, Frank Allbones (Allbones) lived in an apartment duplex (the duplex) at 408 Martin Street in Reidsville. During the evening of 31 October 2007, Allbones heard rustling noises coming from the adjacent apartment of the duplex. Allbones was awakened by the smell of smoke around 2:00 a.m. on 1 November 2007, but he went back to sleep. However, at 2:30 a.m., he awoke again to find his apartment filled with smoke. Allbones went outside where he discovered that Apartment 408B of the duplex was on fire. Allbones' wife called 911, and Allbones removed his family from the duplex. Allbones' apartment was not damaged by the fire, except for the smoke.
Apartment 408B of the duplex had been leased to Ingrid Velasco (Velasco) since January 2006. On 1 November 2007, Velasco was in the process of moving out of the apartment. Defendant and Velasco had been in a long-term relationship and had a daughter together, but they were not dating on 1 November 2007.
Lieutenant Ryan Oakley of the Reidsville Police Department responded to a disturbance call at 3:07 a.m. on 1 November 2007 at 408 Hillcrest Street, located approximately two blocks from Allbones' apartment at 408 Martin Street. Lieutenant Oakley arrived at 408 Hillcrest Street and found Defendant, who told Lieutenant Oakley that his name was Timothy Daniel Love. Lieutenant Oakley conducted a pat-down of Defendant and asked him about a document he felt in Defendant's pocket during the pat-down. Defendant handed the document to Lieutenant Oakley. The document was a credit card application addressed to Velasco at her 408B Martin Street address. Defendant told Lieutenant Oakley that Velasco was his girlfriend. Lieutenant Oakley was aware that the fire department was investigating a fire at 408 Martin Street and recognized the address on the paper as the location of the fire.
Canine Officer James Allen of the Reidsville Police Department responded to the dispatch regarding a fire at 408 Martin Street. While Officer Allen was controlling traffic at the fire, he was called by Lieutenant Oakley to come to Hillcrest Street and assist him with Defendant. At Lieutenant Oakley's request, Officer Allen arrested Defendant for resisting, obstructing, or delaying a public officer, and conducted a search of Defendant. Officer Allen discovered a crack pipe on Defendant's person during the search.
Defendant was taken to the Reidsville Police Department and was interviewed by Detective Mike Austin. Detective Austin read Defendant his Miranda rights, which Defendant agreed to waive. Detective Austin then asked Defendant what he had been doing earlier that evening. Defendant replied "F ____ this, just take me to jail." Defendant was charged with felony breaking or entering, felony larceny, first-degree arson, possession of drug paraphernalia, and resisting a public officer.
Jerry Webster (Webster), a licensed private investigator who conducts fire investigations for the insurance industry, testified at trial as an expert in fire investigation, origin, and cause. Webster investigated the residence at 408B Martin Street on 5 November 2007 and determined that the fire originated in the bedroom of the apartment. In the bedroom, Webster found what he recognized as a "fire pattern that's created by the burning of a flammable liquid on carpet." Webster opined that such a pattern could not be created by someone spilling a flammable liquid but rather was created by pouring the liquid onto the carpet in an arc. Using an accelerant detection dog, Webster found a spot in the bedroom that smelled of gasoline. Based on his investigation, Webster testified that the fire was "deliberately set. . . caused by the ignition of the vapors from the flammable liquid, most likely gasoline, on the floor of the bedroom."
John Harris, Fire Marshal for the City of Reidsville and an officer of the Reidsville Police Department, also testified at trial as an expert in fire investigation, origin, and cause. Fire Marshal Harris testified he responded to a fire call at 408 Martin Street and shortly thereafter was dispatched to Hillcrest Street where Lieutenant Oakley had detained Defendant. When Fire Marshal Harris arrived at the Hillcrest Street location, he smelled a "distinctive odor" on Defendant. Fire Marshal Harris testified: "House fire has a distinctive odor. It's involving the plastics and the other material that's involved and burned, and I smelled the odor on his person when I approached [Defendant]."
Fire Marshal Harris further testified that Defendant, in the presence of his attorney, made the following statement during an interview several days later:
[That at about 1:00 a.m. or 1:30 a.m., Defendant went to 408B Martin Street]
. . .
[Defendant] knew that one of the windows was unlocked. So [Defendant] opened it and went through.
[Defendant] drank some more beer and smoked some crack. When [Defendant] ran out of that, [Defendant] went outside and got a bottle of gas. It was a small Clorox bottle . . . [Defendant] was going to huff it to stay high.
[Defendant] took the bottle inside with [him].. . . [Defendant] was in the bedroom smoking the last of [his] crack, and the gas had spilled out on the floor. Maybe the bottle was still standing.
[Defendant] was sitting on the floor by the closet. [Defendant] was lighting the crack pipe, and, as [his] arm came down, [Defendant] must have hit the bottle of gas.
A fire started, and [Defendant] jumped up. [Defendant] grabbed a bottle of orange juice and tried to put out the fire. [Defendant] was very scared and ran out the door.
Fire Marshal Harris testified that after further investigation of the fire scene, he found a "pour pattern" in the bedroom, which was "indicative of a flammable liquid being poured onto a floor surface[.]" It was his opinion that the fire was intentionally set.
Defendant testified at trial that he had been told to leave work on 31 October 2007, because he was "messed up" after taking Xanax and smoking crack the night before. After leaving work, Defendant called his crack supplier. Defendant met his drug dealer and then smoked crack while his daughters prepared to go trick-or-treating.
Defendant further testified that he later obtained "about a dozen or so" Valium pills from his current girlfriend's pocketbook, and took half of those pills after returning from trick-or-treating at about 7:30 p.m. Defendant drank beer and took his and Velasco's daughter to Velasco's apartment at 408B Martin Street. Defendant returned to his mother's house and continued to take pills and drink beer. A male acquaintance arrived and the two drank beer together until they ran out, then they went to 408B Martin Street to watch television. Because Velasco was moving out, there was no television at the apartment and the other man left.
Defendant climbed into the apartment through a window, went into the bedroom, and smoked crack on the floor. Defendant took more Valium. After running out of crack, Defendant found a bottle of gasoline which he took back to the bedroom, intending to inhale the vapors from the bottle. Defendant testified that he inhaled the vapors "quite successfully" and passed out, and awoke when the fire started.
Defendant testified that he "remember[ed] being startled. Flame had shot out from under [his] leg on the left side of [his] body." He tried to put the fire out with a bottle of Sunny Delight he found in the refrigerator and then left the apartment to go to the apartment of Velasco's cousin. Shortly thereafter, he was detained by Lieutenant Oakley.
During the jury instruction conference, the trial court made the following statement:
Then I believe I'll need to instruct the jury on accident. There's some case law that says that, whether requested or not, when accident is the defense  and my thinking is that that's the defense here  that the Defendant is entitled to such an instruction.
My inclination would be to say as follows, and I'll hear you on it. "When evidence has been offered that tends to show that a fire was accidental and you find that the fire was, in fact, accidental, the Defendant would not be guilty of any crime, even though his acts were responsible for the fire. The fire is accidental if it is unintentional. The burden is on the State to prove those essential facts" strike that.
"When the Defendant asserts that the fire was the result of an accident, he is, in effect, denying the existence of those facts which the State must prove beyond a reasonable doubt in order to convict him. The burden is on the State to prove those essential facts and, in so doing, disprove the Defendant's assertion of accidental injury-accidental fire. The State must satisfy you beyond a reasonable doubt that the fire was not accidental before you may return a verdict of guilty."
In response, the State questioned whether Defendant actually relied on accident as a defense. Defendant replied that the trial court was "perceptive in picking that up" and requested that the instruction be given. The trial court stated: "All right. I'll leave the accident out since there was no affirmative testimony of that. That does not restrict [Defendant] from arguing that it was not intentional, of course."
The trial court instructed the jury, inter alia, as follows:
For you to find . . . Defendant guilty of first-degree arson, the State must prove five things beyond a reasonable doubt: First, that [Defendant] burned a duplex house located at 408 Martin Street Reidsville, North Carolina. A partial burning or the slightest charring is sufficient.
Second, that this duplex house was a dwelling house. A dwelling house is a house that is at least partially inhabited, that is a house that is at least partially the permanent, temporary, or seasonal residence of some person.
Third, that this duplex house  excuse me. Third, that this duplex house was the dwelling house of someone other than . . . Defendant. If this duplex house was the dwelling house of. . . Defendant as well as of another person, it would be the dwelling house of someone other than . . . Defendant.
Fourth, that this duplex house was occupied when the Defendant burned it, that is that some person other than . . . Defendant was physically present in the duplex house at the time.
And fifth, that . . . Defendant did so maliciously, that is that he intentionally and without justification or excuse burned the duplex house.
Defendant did not object to the jury instructions given by the trial court. The jury found Defendant guilty of possession of drug paraphernalia, resisting, delaying, or obstructing a public officer, and first-degree arson.
Defendant solely argues that the trial court erred by failing to give the proposed instruction on accident. We disagree. Because Defendant did not object at trial to the jury instructions, we review for plain error. State v. Loftin, 322 N.C. 375, 380, 368 S.E.2d 613, 616 (1988). Plain error arises where a trial court commits an error "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." State v. Bagley, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), cert. denied, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988).
"[I]t is the duty of [a] trial court to instruct the jury on all of the substantive features of a case." Loftin, 322 N.C. at 381, 368 S.E.2d at 617. The trial court must provide such instructions regardless of whether a party requests them, and defenses to the charges against a defendant which arise from the evidence are among the substantive features of a case which warrant instruction. Id. (citations omitted).
Accident is not an affirmative defense, State v. Lytton, 319 N.C. 422, 425-26, 355 S.E.2d 485, 487 (1987); instead, a claim of accident "acts to negate the mens rea element of [the offense]." Id. Our Supreme Court addressed claims of accident in State v. Riddick, 340 N.C. 338, 457 S.E.2d 728 (1995). In Riddick, the defendant was found guilty of first-degree murder on a theory of premeditation and deliberation and argued that the trial court erred by failing to provide an instruction on accident. Id. at 339, 457 S.E.2d at 729. Overruling this argument, the Supreme Court observed:
The jury in the present case was instructed that it could not return a verdict finding the defendant guilty of first-degree murder unless it found beyond a reasonable doubt that the defendant specifically intended to kill the victim. In reaching its verdict convicting the defendant of first-degree murder, the jury found that the defendant had the specific intent to kill Michael Smith and, necessarily, rejected the possibility that the killing was unintentional. Therefore, the jury verdict finding the defendant guilty of first-degree murder, and not the unintentional act of involuntary manslaughter, precludes the possibility that the same jury would have accepted the defendant's claim that the shooting was accidental even if it had been given the requested instruction. This assignment of error is without merit and, accordingly, is overruled.
Id. at 344, 457 S.E.2d at 732.
In cases where a trial court instructs a jury that the State must prove beyond a reasonable doubt that a defendant intentionally committed the charged act, our Court has likewise held that such instruction is "'the functional equivalent'" of an accident instruction. See State v. Cox, 166 N.C. App. 517, 603 S.E.2d 584, 2004 WL 2238971 at *3 (2004) (unpublished opinion) (quoting Riddick, 340 N.C. at 344, 457 S.E.2d at 732); see also State v. Jones, 166 N.C. App. 761, 604 S.E.2d 367, 2004 WL 2339380 at *4 (2004) (unpublished opinion) (holding that a "trial court properly incorporated accident into the juryinstructions [sic] under the more general concept of `justification or excuse.'").
In the case before us, the trial court instructed the jury that, in order to convict Defendant, it must find that Defendant caused the fire and "that [D]efendant did so maliciously, that is that he intentionally and without justification or excuse burned the duplex house." Because the trial court instructed the jury that it must find that Defendant acted "intentionally and without justification or excuse[,]" and the jury found Defendant guilty, the jury "necessarily[] rejected the possibility that the [burning] was unintentional." Riddick, 340 N.C. at 344, 457 S.E.2d at 732. We therefore hold that the trial court's instruction concerning arson was sufficient and find no error.
Defendant does not argue his remaining assignments of error and these are therefore deemed abandoned pursuant to rule N.C.R. App. P. 28(b)(6).
No error.
Judges WYNN and BRYANT concur.
Report per Rule 30(e).