DILLON, Judge.
*133 Joshua Andrew Stepp (Defendant) appeals from a judgment sentencing him to lifetime imprisonment, based on a jury verdict finding him guilty of first-degree murder, under the felony murder rule, for the death of his ten-month old stepdaughter Cathy.[1] We conclude Defendant is entitled to a new trial based on the trial court’s failure to instruct the jury on an affirmative defense to the underlying felony, which supported the first-degree murder conviction.
I: Background
On the night of 8 November 2009 at approximately 8:50 P.M., Defendant placed a 911 call from his Wake County apartment, where he resided with three other people: Brittany Yarley (“Ms. Yarley”), his wife of six months; Cathy, Ms. Yarley’s ten-month old daughter; and Defendant’s four-year old daughter.
A: Physical Evidence at the Scene
Police officers and EMS responded to Defendant’s 911 call and discovered that Cathy had no pulse and was not breathing. The responders attempted resuscitation and were able to get a pulse in the ambulance before Cathy went into cardiac arrest. When Cathy arrived at Wake Medical Center, she had no vital signs. Cathy’s pupils were fixed and dilated, indicating brain death; Cathy was declared dead fifteen minutes after her arrival.
In a trash can at the apartment the officers found a urine-soaked diaper, three diapers containing baby wipes, feces, and blood, and empty rum, whiskey, and beer bottles. Blood and feces were visible in a number of locations throughout the apartment. Blood was also found on Defendant’s underwear. Defendant smelled of alcohol.
B: Cathy’s Injuries
During the course of the evening, Cathy sustained injuries to her head and back as well as to her rectal and genital areas. Her head and back injuries included several bruises, a broad abrasion on her forehead, lacerations in her mouth, and hemorrhaging in her brain and retinas. Cathy’s rectal injuries included bruising and several deep and superficial tears in and around her anal opening.
The injuries to her genital area, which were less severe than those in her rectal area, included two superficial tears on the forward portion *134 and a single wider tear at the rear portion. However, there was no evidence of injuries indicating deep penetration; and her hymen was intact.
II: The Trial
On 30 November 2009, Defendant was indicted on charges of first-degree murder and first-degree sexual offense. The matter came on for trial at the 18 July 2011 criminal session of Wake County Superior Court.
A: State’s Evidence
At trial, the State offered the testimonies of a number of medical witnesses, which tended to show as follows: Cathy’s head injuries were likely caused by multiple blows which were consistent with non-accidental trauma “caused by an abusive person.” Her rectal injuries were consistent with the introduction of a penis or other object that penetrated the anus but most likely not by a single finger wrapped in a wipe. Her genital injuries may have been caused by a finger or an object, and were also consistent with an. adult attempting, unsuccessfully, to insert his penis into her vagina.
B: Defense Evidence
Defendant testified in his own behalf and offered the testimonies of other witnesses, including experts, which tended to show as follows: Defendant was a member of the Army Reserves, having resigned from active duty after completing a tour in Iraq. He suffered from post-traumatic stress disorder and alcohol dependency. Ms. Yarley was also an Army reservist, who worked at Fort Bragg.
During the day of 8 November 2009, Defendant took four Vicodin capsules and drank several shots of liquor and cans of beer. He spent the afternoon at a sports bar where he continued drinking. Because Ms. Yarley was scheduled to work the night shift on that day, Defendant returned to the apartment at 7:25 P.M. to watch the children for the evening. Upon his return, Cathy was crying and screaming; and Ms. Yarley noticed that Defendant was lethargic and stumbling.
After Ms. Yarley’s departure, Defendant ate dinner and then attempted to calm Cathy down by holding her and giving her a bottle. He then placed Cathy on the floor of his bedroom closet and walked away to escape the sound of her crying. Defendant returned to her, grabbed her by the back of the head, and rubbed her face into the carpet. Cathy’s face • became raw and began to bleed, and she cried even harder. Defendant used a damp washcloth to dab the blood and then carried Cathy into the living room, put Vaseline on her face, and laid her down on the living *135 room floor. This episode occurred at approximately 8:00 P.M., which was the time that, according to a defense witness, Defendant’s blood alcohol level likely peaked at 0.141%.
Moments later, Defendant opened Cathy’s diaper and discovered that it was full of feces. Cathy flailed and screamed as Defendant tried to clean her with a baby wipe. Defendant wiped aggressively to get the feces and urine off of Cathy’s body. Cathy began bleeding from her anus, and Defendant tried to stop the bleeding with a baby wipe. A few minutes later, Cathy was still bleeding and had defecated again. Defendant cleaned Cathy again with a baby wipe and put on a second fresh diaper. However, the second diaper became soiled, and Defendant cleaned and changed Cathy a third time.
Cathy continued to scream and cry. Defendant then grabbed some toilet paper, wet it, and put it in Cathy’s mouth in an attempt to stop the screaming. However, Cathy started gagging. Defendant was unable to retrieve the toilet paper from Cathy’s mouth with his fingers; so he picked Cathy up, shook her, and hit her on her back to try to dislodge the toilet paper. He was then able to pull the toilet paper out of Cathy’s mouth with his fingers; however, by this time, Cathy was barely breathing. Moments later, Cathy stopped breathing, whereupon Defendant made the 911 call.
The testimonies of Defendant’s witnesses tended to show that Defendant suffered from substance abuse issues and post-traumatic stress disorder caused by his military service, conditions which affected his impulse control and decision making; that on the evening in question, he had trouble coping with Cathy’s crying; and that his intentions all along were to stop Cathy from crying. Regarding Cathy’s injuries, one defense medical witness testified that he had frequently seen vaginal and rectal tears caused by parents using force to clean feces, and that Cathy’s injuries to her rectal and genital areas were consistent with harsh cleaning with a finger and baby wipes and were not consistent with a sexual assault.
C: Closing Arguments
During closing arguments, the State asserted that the jury should find Defendant guilty of first-degree murder. The State contended that Defendant’s acts involved premeditation and deliberation. Alternatively, the State contended that Defendant was guilty of first-degree murder based on the felony murder rule, as the evidence showed that Defendant had either raped or attempted to rape Cathy, or otherwise committed a sexual offense upon Cathy.
*136 Defendant admitted that he was responsible for Cathy’s death, but contended that he had not acted with premeditation and deliberation due to his condition, nor had he sexually assaulted Cathy in any way; and, therefore, Defendant asserted the jury should consider returning a guilty verdict for second degree murder.
D: The Verdict and Judgment
The jury found Defendant guilty of first-degree murder. Specifically, the verdict sheet submitted to and answered by the jury stated as follows:
We, the jury, return as our unanimous verdict that the defendant is:
X Guilty of first degree murder
If you find the defendant guilty of first degree murder, is it:
A. On the basis of malice, premeditation, and deliberation?
ANSWER: NO
B. Under the first degree felony murder rule in the perpetration of rape of a child by an adult?
ANSWER: NO
C. Under the first degree felony murder rule in the attempted perpetration of rape of a child by an adult?
ANSWER: NO
D. Under the first degree felony murder rule in the perpetration of sexual offense with a child by an adult?
ANSWER: YES
If you find the defendant guilty of first degree murder under the first degree felony murder rule in the perpetration of a sexual offense with a child by an adult, is it:
1. Based upon a sexual act of anal intercourse?
ANSWER: NO.
2. Based upon a sexual act of penetrating by an object into the genital opening of the alleged victim?
ANSWER: YES
*137 3. Based upon a sexual act of penetration by an object into the anal opening of the alleged victim?
ANSWER: NO
_ Guilty of second degree murder[2]
_ Not guilty
Based on the jury’s verdict, the trial court imposed a sentence of life imprisonment without parole. From this judgment, Defendant appeals.
Ill: Analysis
In Defendant’s sole argument on appeal, he contends the trial court committed reversible error by failing to instruct the jury on an affirmative defense to the predicate felony on which the jury based its first-degree murder conviction. We agree.
As reflected by its responses to the issues presented on the verdict sheet, the jury convicted Defendant of first-degree murder based solely on its determination that Defendant was also guilty of committing a “sexual offense with a child” in violation of N.C. Gen. Stat. § 14-27.4 (2011), a Class B1 felony which proscribes, inter alia, the engagement of a “sexual act” with a child by an adult. Further, the jury concluded that Defendant was guilty of committing this offense based solely on its determination that Defendant had committed a “sexual act,” as defined in N.C. Gen. Stat. § 14-27.1(4) (2011), upon Cathy by penetrating her genital opening with an object.[3]
N.C. Gen. Stat. § 14-27.1(4) (2011), defines “sexual act,” in relevant part, as:
... the penetration, however slight, by any object into the genital . . . opening of another person’s body: provided, *138 that it shall be an affirmative defense that the penetration was for accepted medical purposes.
Id. (emphasis added). The “penetration” of the female “genital opening” is accomplished when the defendant has caused an object to enter the labia without entering the vagina, see State v. Bellamy, 172 N.C. App. 649, 658, 617 S.E.2d 81, 88 (2005), disc. review denied, 360 N.C. 290, 628 S.E.2d 384 (2006); and an “object” can be, not only an inanimate object, but also a human body part, such as a finger, see State v. Lucas, 302 N.C. 342, 345, 275 S.E.2d 433, 436 (1981).
At trial, Defendant admitted that he penetrated Cathy’s genital opening with his finger; however, he requested an instruction on the affirmative defense provided by N.C. Gen. Stat. § 14-27.1(4), that he penetrated her genital opening for “accepted medical purposes.” Defendant based his request on the evidence tending to show that he penetrated Cathy’s genital opening with his finger wrapped in a wipe for the purpose of cleaning feces and urine during the course of changing her diapers and that this purpose is an “accepted medical purpose.” However, the trial court denied the request, to which Defendant properly excepted.
A: Defendant was Entitled to the Instruction
We believe that Defendant was entitled to have the jury instructed on the affirmative defense for “accepted medical purpose” as provided in N.C. Gen. Stat. § 14-27.1(4).
We have held that “[f]or a jury instructipn to be required on a particular defense, there must be substantial evidence of each element of the defense when ‘the evidence [is] viewed in the light most favorable to the defendant.” State v. Hudgins, 167 N.C. App. 705, 711, 606 S.E.2d 443, 446 (2005) (citation and quotation marks omitted). The burden rests with Defendant to establish the affirmative defense. State v. Caddell, 287 N.C. 266, 289, 215 S.E.2d 348, 363 (1975) (describing an affirmative defense as “one in which the defendant says, ‘I did the act charged in the indictment, but I should not be found guilty of the crime charged because * * * ”).
In his brief, Defendant points to evidence that, when viewed in the light most favorable to him, supports giving the instruction. Specifically, he points to his own testimony that he digitally penetrated Cathy’s genital opening for the purpose of cleaning feces and urine during diaper changes. He points to the testimony of his medical expert who stated that Cathy’s injuries to her genital opening were consistent with Defendant’s stated purpose. For example, this witness testified as follows:
*139 The source of the [genital] injuries were - again, by the information that I was provided, Mr. Stepp in his testimony has admitted to trying to clean a poopy diaper in a very rough way using wipes, his fingers, and in a way that was consistent with this type of trauma. This was harsh, harsh physical trauma in cleaning out a diaper. I have seen more cases than I would like of parents trying to clean out poopy diapers and how difficult it is to get stool out of the vaginal and rectal areas on occasion, and the kind of force that they have to use sometimes. This was excessive, but it is consistent with a digital attack, if you will, on those areas there.
He points to the evidence presented by the State regarding the soiled diapers and wipes found by the police at the apartment. He points to the testimonies of the State medical experts that the injuries to the genital opening were more superficial in nature - in that there was no evidence of deep penetration or that the hymen was broken - and could have been caused by fingers.
Neither party cites to a case in which a North Carolina court has construed the phrase “accepted medical purposes” as contained in N.C. Gen. Stat. § 14-27.1(4). We believe that when the Legislature defined “sexual act” as the penetration of a genital opening with an object, it provided the “accepted medical purposes” defense, in part, to shield a parent[4] — or another charged with the caretaldng of an infant — from prosecution for engaging in sexual conduct with a child when caring for the cleanliness and health needs of an infant, including the act of cleaning feces and urine from the genital opening with a wipe during a diaper change. To hold otherwise would create the absurd result that a parent could not penetrate the labia of his infant daughter to clean away feces and urine or to apply cream to treat a diaper rash without committing a Class B1 felony, a consequence that we do not believe the Legislature intended.
Though not controlling on our resolution of this issue, we do find decisions from other jurisdictions, involving statutory language similar to “accepted medical purposes,” instructive. For instance, the Texas Court of Criminal Appeals, that State’s highest appellate court for criminal cases, handed down a decision on 6 November 2013 ordering a new trial for a defendant, convicted of sexual assaulting a child - where he admitted to digitally penetrating the genital opening of a three-year old *140 girl for the purpose of applying medication for a diaper rash - because the trial court failed to instruct the jury on an affirmative defense provided in the Texas Penal Code, excusing “conduct [which] consisted of medical care for the child[.]” Villa v. Texas, 2013 Tex. Crim. App. LEXIS 1655 (2013) (interpreting Tex. Penal Code § 22.011(d) (2012)). On the same day it decided Villa, the Texas Court of Criminal Appeals also handed down Cornet v. Texas, 2013 Tex. Crim. App. LEXIS 1654 (2013), in which it held, as in Villa, that it was error not to instruct on the “medical care” defense, where a defendant was convicted of sexual assault based on digitally penetrating the genital opening of his step-daughter. However, unlike its holding in Villa, the court concluded that the error was harmless because the jury in Comet also convicted the defendant of a second sexual assault count based on the defendant’s oral contact with the child’s anus during the same event.[5] Id. (reasoning that it “is inconceivable that the jury would have found [the defendant] guilty of causing the anus of the complainant to contact his mouth... had it believed his claim that he was providing medical care to the complainant [when he digitally penetrated her genital opening] during the same event”).
In a case involving the prosecution of a defendant for digitally penetrating the genital opening of his young step-child — where the defendant admitted to the conduct, but contended that he did so for the purpose of applying salve to treat the child’s diaper rash — the Oregon Court of Appeals held that it was reversible error for the trial court not to instruct the jury on an affirmative defense provided by statute which excused such conduct where the “penetration is part of a medically recognized treatment[.]” Oregon v. Ketchum, 206 Ore. App. 635, 138 P.3d 860, review denied, 341 Ore. 450, 143 P.3d 773 (2006) (quoting Or. Rev. Stat. § 163.412 (2003)). The court ordered a new trial, holding that the defense was not limited to the conduct of medical personnel. Id.
We believe the facts of our case are similar to the facts of Villa and Ketchum — where the courts ordered a new trial — because Defendant was convicted solely on a finding that he digitally penetrated Cathy’s genital opening with an object.
In the present case, the State makes a number of arguments in support of the trial court’s refusal to give the “accepted medical purpose” affirmative defense instruction. First, the State argues that Defendant failed to meet his evidentiary burden by failing to produce any evidence *141 to establish that penetrating the genital opening of an infant to clean out feces and urine is, in fact, an “accepted medical purpose,” citing State v. Hageman, 307 N.C. 1, 27, 296 S.E.2d 433, 448 (1982) (stating that “in this State, we have traditionally placed the burden of production and persuasion on defendants who seek to avail themselves of affirmative defenses”). In other words, the State argues that though there was expert testimony suggesting that Defendant penetrated the genital opening to clean it, none of the experts ever expressly testified that Defendant’s actions constituted an “accepted medical purpose.”
We agree that there may be circumstances where a defendant would be required to offer direct evidence through the testimony of a medical expert to establish that certain conduct constitutes an “accepted medical purpose,” rather than allowing a jury to infer it from the evidence. However, we do not believe that Defendant was required, in this instance, to offer direct evidence establishing that penetrating the genital opening of an infant for the purpose of cleaning the feces and urine during a diaper change constitutes an “accepted medical purpose.” Our appellate courts have held on a number of occasions that, in the context of a criminal trial, direct evidence need not be provided to prove a fact if it otherwise is within the “common knowledge and experience” of the jury. State v. Packer, 80 N.C. 439, 441-42 (1879). In Packer, the defendant appealed his conviction for selling an “intoxicating liquor” where the evidence showed that he sold “port wine,” but the State did not produce evidence that “port wine” was, in fact, an “intoxicating liquor.” Id. In upholding the conviction, our Supreme Court held that “the jury could rightfully as to matters of common knowledge and experience, find without any testimony as to [whether “port wine” is an “intoxicating liquor.”] Id.; see also State v. Fields, 201 N.C. 110, 114, 159 S.E. 11, 12 (1931); State v. Payne, 328 N.C. 377, 400, 402 S.E.2d 582, 595 (1991) (stating, in a prosecution for murder and rape, that “[i]t is common knowledge that homeowners do not change or replace carpets as frequently as once every several months”); State v. Becker, 241 N.C. 321, 326, 85 S.E.2d 327, 331 (1954) (stating, in a prosecution for manslaughter where there was testimony as to the defendant’s driving speed and his distance from the victim, that “ [i]t would seem as a matter of common knowledge and experience that it would have been a physical impossibility for the defendant to have stopped his car in so short a distance if at the time in question it was traveling at such a rate of speed”); State v. Purdie, 93 N.C. App. 269, 280, 377 S.E.2d 789, 795 (1989) (stating, in a prosecution for involuntary manslaughter, that “it is common knowledge that intoxication impairs the ability to drive”).
*142 We also believe this evidentiary issue is similar to those in cases involving professional malpractice, where we have stated that an exception to the rule requiring expert testimony to establish the professional standard of care is “where the common knowledge and experience of the jury is sufficient to evaluate compliance with a standard of care.” Russell v. DENR, _ N.C. App. 742 S.E.2d 329, 333 (2013) (quoting Handex v. Haywood, 168 N.C. App. 1, 11, 607 S.E.2d 25, 31 (2005)). In conclusion, while there may be circumstances where expert testimony may be required to establish that certain conduct constitutes an “accepted medical purpose” pursuant to N.C. Gen. Stat. § 14-27.1(4), we believe that it is within the common knowledge and experience of the jury that penetrating the genital opening of an infant to clean feces and urine during a diaper change is an “accepted medical purpose.”
The State next argues that the “accepted medical purpose” defense did not apply to the facts of this particular case. Specifically, the State contends that even if Defendant’s -purpose of cleaning the genital opening was an “accepted medical purpose,” doing so in a manner that causes injury is not “accepted,” and, therefore, Defendant was not entitled to the instruction. We believe the State’s argument is misplaced. First, the plain language of the statute provides that the “medical purpose,” and not the manner, must be “accepted.” We do not believe that the Legislature intended to criminalize, as a Class B1 felony, an action by a doctor or a parent who penetrates a genital opening of a child under 13 years of age for an “accepted medical purpose,” but does so in a negligent manner, thereby unintentionally causing injuries.[6]
The State further argues the following:
By defendant’s logic, a robber sticking a gun in a victim’s vagina or anus to intimidate the victim would not be a sexual offense; torture by inserting objects into a person’s genitals or anus would not be a sexual offense; aperpetrator forcefully punching andpenetrating avictim’s genitalia to harm and degrade them would not be guilty of a sexual offense; a caretaker forcefully penetrating a child in a rage would not be guilty of a sexual offense. By defendant’s analysis, if in any of these scenarios, the *143 perpetrator merely claimed to be doing a medical check or administering medication, the “accepted medical purpose” instruction must be given upon request.
However, assuming arguendo any of the foregoing scenarios were properly before us, it stretches credulity to propose that these acts could ever be performed for an “accepted medical purpose.” Further, as discussed above, the evidence relied upon by Defendant in this case consists of more than his self-serving assertion that he penetrated Cathy’s genital opening to clean feces. See State v. Sessoms, _ N.C. App. _, _, 741 S.E.2d 449, 452 (2013) (holding that the trial court did not commit error by refusing to instruct the jury on “the defense of others” in the prosecution for assault with a deadly weapon where the only evidence supporting the defense was the defendant’s self-serving testimony).
Finally, the State argues that the trial court did not err by refusing to instruct the jury on the “accepted medical purpose” defense because the specific instruction tendered by Defendant for the trial court’s consideration was an incorrect statement of law. Specifically, the State argues that the “proposed instruction can be construed to incorrectly place the burden on the State to disprove the affirmative defense beyond a reasonable doubt.” We believe this argument is misplaced.
Our Supreme Court has stated that “it is the duty of the trial court to instruct the jury on all of the substantive features of a case. ... All defenses arising from the evidence presented during the trial constitute substantive features of a case and therefore warrant the trial court’s instruction thereon.” State v. Loftin, 322 N.C. 375, 381, 368 S.E.2d 613, 617 (1988). This duty arises even where a defendant fails to request the instruction. Id.; see also State v. Scanlon, 176 N.C. App. 410, 424, 626 S.E.2d 770, 780 (2006). “Failure to instruct upon all substantive or material features of the crime charged is error.” State v. Bogle, 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989).
In this case, the “accepted medical purpose” defense is a “substantive feature” of this case; and, therefore, the trial court was required to give the instruction even if Defendant never made a request for the instruction. We believe that State v. Hudgins, 167 N.C. App. 705, 606 S.E.2d 443 (2005), is instructive on this point. In Hudgins, the defendant requested an instruction on the defense of “necessity” in a DWI prosecution. The Court stated the general rule that the defense of “necessity” is available to excuse a person from criminal liability where he acts “to protect life or limb or health[.]” Id. at 710, 606 S.E.2d at 447. The defendant provided the trial court with an instruction that was not a correct *144 statement of the law in that “it [further] suggested that the defense was available for attempts to [protect property from] damage.” Id. We held that “[a] trial court is not, however, ‘relieved of his duty to give a correct ... instruction [as to a defense], there being evidence to support it, merely because defendant’s request was not altogether correct.” Id. (quoting State v. White, 288 N.C. 44, 48, 215 S.E.2d 557, 560 (1975)). Accordingly, we do not need to reach whether Defendant’s tendered instruction was a correct statement of the law: Since the instruction pertained to a substantive feature of the case, the trial court was required to give it.
B: The Error Was Reversible
Having determined that the trial court erred by failing to instruct the jmy on the affirmative defense of “accepted medical purpose,” we must determine whether the error is reversible pursuant to N.C. Gen. Stat. § 15A-1443 (2011). Defendant argues that the error is a constitutional error and, therefore, the burden is on the State to show that the error was harmless beyond a reasonable doubt, pursuant to N.C. Gen. Stat. § 15A-1443(b). We believe that “insofar as the error committed is not one of constitutional dimension, [Defendant has met his burden of satisfying us that had the error in the instruction ... not been made, there is a reasonable possibility that a different result would have been obtained at trial],]” pursuant to N.C. Gen. Stat. § 15A-1443(a). State v. Mash, 323 N.C. 339, 349-50, 372 S.E.2d 532, 538-39 (1988). Further, “[i]nsofar as the error is one of constitutional dimension, the [S]tate has not satisfied us beyond a reasonable doubt that the error was harmless.” Id. at 350, 372 S.E.2d at 539. Accordingly, we believe that the error is reversible based on either standard.
Specifically, Defendant admitted to penetrating and causing the superficial tears to Cathy’s genital opening. In other words, his defense includes an admission to the elements of the crime of sexual conduct with a child, that is, he admitted that he digitally penetrated Cathy’s genital opening. However, Defendant presented evidence that he committed these acts for the purpose of cleaning feces and urine away from Cathy while changing her diapers.
In the State’s closing arguments, the prosecutor contended that “even under the defendant’s version of the facts, penetrated her with his finger, however slight, .... That’s what a sexual act is, the defendant’s guilty of that charge. ” In other words, the prosecutor implied that the jury could convict Defendant of felony sexual offense based upon his digital penetration of Cathy’s genital opening - conduct to which Defendant admitted - even if the jmy believed Defendant’s testimony and evidence *145 that he engaged in the conduct for the purpose of cleaning feces and urine. Furthermore, the trial court instructed the jury that it was their duty to return a verdict of guilty of committing a sexual offense with a child if they found that Defendant had caused the “penetration, however slight,... by an object into [Cathy’s] genital [] opening];] that the “object may be an animate or an inanimate object[;] that Cathy was “a child of under the age of 13 years];]” and that Defendant was “at least 18 years of age.” The jury was not given any option in the instruction to, otherwise, find Defendant not guilty even if they determined that Defendant engaged in the conduct for an “accepted medical purpose.” Based on the foregoing, we believe that there is a possibility that the jury, or some number of jurors, would have been satisfied that Defendant penetrated Cathy’s genital opening for an “accepted medical purpose.” Therefore, Defendant’s conviction of felony first-degree murder must be reversed.
Finally, the State contends that “]i]f this Court allows [Defendant] relief, judgment should be entered on second-degree murder as a lesser-included offense of first-degree murder under both the theory of premeditation and deliberation and felony murder,” contending that “]s]econd-degree murder is a lesser included offense of felony murder.” The State’s argument based on the theory of premeditation and deliberation is inapposite, as the jury did not convict Defendant based on premeditation and deliberation. As to the State’s argument that second degree murder is a lesser included offense of felony murder, neither case cited by the State stands for the proposition that the proper remedy from this Court, where we find reversible error in the conviction of felony first-degree murder, is to direct the trial court to enter judgment on second degree murder. State v. Gwynn, 362 N.C. 334, 338, 661 S.E.2d 706, 708 (2008); State v. Millsaps, 356 N.C. 556, 565, 572 S.E.2d 767, 774 (2002). Rather, Gwynn and Millsaps were concerned with the trial court’s failure to instruct a jury on the lesser-included offense of second degree murder in a prosecution of felony first-degree murder. We note that, in Gwynn, the Supreme Court stated that voluntary manslaughter is also a lesser included offense of felony murder. Gwynn, supra. Therefore, we do not believe that it is the duty of this Court to invade the province of a jury to determine whether the actions of Defendant constituted second degree murder or some other lesser-included offense of felony murder.
IV: Conclusion
Defendant inflicted numerous and severe injuries on his ten-month old stepdaughter Cathy on the evening of 8 November 2009, which led to her tragic death. There was substantial evidence presented at trial from which the jury could have convicted Defendant of first-degree murder *146 based on a number of theories. However, the jury based its verdict solely on the finding that Defendant had penetrated Cathy’s genital opening with an object prior to inflicting the injuries that caused her death. The evidence was conflicting as to whether Defendant penetrated Cathy’s genital opening for the sole purpose of cleaning feces and urine while changing her diapers or whether he ever deviated from this purpose. However, a jury could infer from the evidence - when taken in the light most favorable to Defendant - that Defendant penetrated Cathy’s genital opening, causing superficial tears thereto, while he was cleaning the feces and urine. Therefore, Defendant was entitled to the “accepted medical purpose” instruction pursuant to N.C. Gen. Stat. § 14-27.1(4), a defense which was a substantive feature of the case, notwithstanding that a proposed instruction tendered by Defendant may have contained an incorrect statement of the law. Defendant properly objected to the trial court’s refusal to give the instruction. Given that Defendant admitted to the conduct which formed the sole basis by which the jury returned a guilty verdict of first-degree murder, the trial court’s error by not giving the affirmative defense instruction by which the jury could have excused Defendant of his admitted conduct, we believe the error was prejudicial. Accordingly, we are compelled to reverse the verdict of the jury convicting Defendant of felony first-degree murder and remand this case for a new trial.
NEW TRIAL.

. Cathy is a pseudonym.

. Having convicted Defendant of first-degree murder, the jury did not reach the question of Defendant’s guilt of second degree murder.

. Though the jury could have found Defendant guilty of first-degree murder based on either premeditation and deliberation or based on a finding that Defendant either had vaginal intercourse or attempted to have vaginal intercourse with Cathy, the jury found Defendant not guilty based on these theories. Further, the jury could have found that Defendant committed a “sexual act” by penetrating Cathy’s anal opening with either his penis or another object; however, the jury found Defendant not guilty of felony sexual offense based on these theories as well. Accordingly, our review must be limited to the evidence regarding the penetration of Cathy’s genital opening with an object, and, for the reasons stated herein, we must view this evidence in the light most favorable to Defendant.

. There is no language in N.C. Gen. Stat. § 14r27.1(4) which limits its application of the defense to acts performed by medical professionals.

. Under Tex. Penal Code § 21.011(d), the “medical care” defense is not available where the conduct involves contact of a genital opening by a defendant’s mouth. Id.

. We do not imply that the evidence conclusively establishes that Defendant did not intend to cause the injuries to Cathy’s genital opening. This is a matter for a jury to resolve. Rather, we believe that a jury could reasonably conclude from the evidence - when taken in the light most favorable to Defendant - that Defendant unintentionally caused Cathy’s injuries to her genital opening while cleaning her.